Filed 3/13/26 Certified for Publication 4/10/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LOS ANGELES COUNTY PROFESSIONAL PEACE OFFICERS ASSOCIATION, <br><br> Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES et al., <br><br> Respondent. | B338182 <br><br> (Los Angeles County Super. Ct. No. 23STCP00398) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge. Reversed and remanded with directions.

Hayes, Ortega & Sanchez and Dennis J. Hayes for Appellant.

Miller Barondess, Mira Hashmall and Eleanor S. Ruth for Respondent.

———————————————

# INTRODUCTION

The Los Angeles County Professional Peace Officers Association (PPOA) appeals the denial of its petition for writ of mandate against the County of Los Angeles, the Board of Supervisors for the County of Los Angeles, Los Angeles County Employee Relations Commission, and County Executive Officer Fesia Davenport (together, the County).  PPOA and the County are parties to a memorandum of understanding (MOU) governing the terms and conditions of employment for PPOA members.  PPOA asserts it has the right to meet and confer regarding the County's decision to outsource certain work performed by PPOA members to a private security contractor.  The County responds that PPOA waived any such right in the MOU because the MOU recognizes the County may contract with a private firm and contains a management rights clause.  We reverse because the County fails to demonstrate that PPOA clearly and unmistakably waived its right to meet and confer regarding the County's outsourcing decision.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Parties' MOU*

PPOA is "an employee organization recognized by the County of Los Angeles as the exclusive bargaining representative for employees in County Bargaining Unit 621, among others, for purposes of collective bargaining pursuant to the Meyers-Milias-Brown Act, California Government Code §§ 3500 et seq."  Bargaining Unit 621 (BU621) includes security officers employed by the County.

2

After labor negotiations between PPOA and the County, PPOA members ratified, and the County Board of Supervisors adopted, the MOU. The MOU was effective October 2018 through September 2021, but the parties agreed to extend the MOU term by an additional six months.

As relevant here, Article 16 of the MOU provided:

Article 16        Employee Rights in the Event of Transfer of Functions

In the event the County enters into any agreement with another public employer or private entity which involves the transfer of functions now being performed by employees in this representation Unit or the law provides for the transfer of functions now being performed by employees in this Unit to another public or private agency, the County will advise such public or private entity of the existence and terms of this Memorandum of Understanding and will immediately advise PPOA of such agreement or law. In addition, the County will consult with the employer absorbing a County function to encourage utilization of affected employees by the new employer. When a Department's Request for Proposal is approved by the Chief Executive Officer, the Labor Relations Office will arrange to meet with representatives of PPOA to advise them of this action within five (5) days.

When advance knowledge of the impact of pending changes in function, organization, or operations is available which will result in the abolishment of positions or when there is any major reassignment of functions from one department to another or to another agency, Management will make an intensive

3

> effort to either reassign or transfer affected employees to other position for which they qualify, or train affected employees for new positions in order to retain their services.
>
> It is understood and agreed that Management shall have no obligation to negotiate the decision of any reorganization by the County during the life of this agreement.

In "May 2021, PPOA learned that the County intended to contract out to a private company security work previously performed by Security Officers at the Kenneth Hahn Hall of Administration." PPOA asked to meet and confer with the County about this decision, but the County declined and instead offered to engage in "effects bargaining" regarding its decision.[1] The County asserted that PPOA waived its right to bargain over the County's decision to outsource in Article 16 of the MOU, such that there was "no obligation to negotiate the decision of any reorganization by the County."

B.   *Administrative Proceedings*

In June 2021, PPOA filed an unfair practice charge with the Los Angeles County Employee Relations Commission

---

[1]   "Effects bargaining" refers to an employer's duty under the Meyers-Milias-Brown Act to "bargain regarding the 'effects of a decision that has a foreseeable effect on matters within the scope of representation, even where the decision itself is not negotiable.' " (*County of Sonoma v. Public Employment Relations Bd.* (2022) 80 Cal.App.5th 167, 186 (*Sonoma*).)

4

(ERCOM).[2] PPOA alleged the County failed to meet and confer over the outsourcing decision as required by statute.[3] PPOA further alleged the MOU did not waive PPOA's right to meet and confer over the outsourcing decision because the waiver asserted by the County was not "clear and unmistakable."

In April 2022, an ERCOM hearing officer recommended "dismiss[al]" of PPOA's unfair practice charge, concluding that the County had a duty to bargain regarding the outsourcing decision but that PPOA had waived its bargaining rights on the issue in Article 16 of the MOU. Consulting the dictionary definition of the word "reorganization" and the broader context of Article 16, the hearing officer determined it was "clear and unmistakable . . . that the word 'reorganization' means and refers to those specific situations where an employer transfers functions being performed by bargaining unit employees to a private agency."

PPOA objected to the hearing officer's findings and recommendation. ERCOM remanded the matter to the hearing officer for reconsideration in light of "relevant precedent issued by the [California] Public Employment Relations Board (PERB)"

---

[2] ERCOM is the "agency empowered to resolve public employment labor disputes in Los Angeles County." (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 916.)

[3] PPOA also alleged that, even if the outsourcing decision itself was not subject to bargaining, the County purportedly refused to engage in effects bargaining. (See *Sonoma, supra,* 80 Cal.App.5th at p. 186.) ERCOM rejected this claim, PPOA did not raise it in its petition for writ of mandate, and it is not at issue in this appeal.

5

clarifying that "the burden of proof" is with "the County [to] establish[] the affirmative defense of waiver."[4] The hearing officer issued a supplemental report again recommending dismissal, concluding the County met its burden to show that PPOA had waived its collective bargaining rights regarding the outsourcing decision. ERCOM adopted the hearing officer's reports and recommendation and dismissed the unfair practice charge.

C.      *PPOA's Petition for Writ of Mandate*

In February 2023, PPOA filed a verified petition for writ of mandate (Code Civ. Proc., § 1085) in superior court against the County. PPOA sought an order compelling the County to meet and confer about the outsourcing decision, and it requested that the superior court set aside the ERCOM decision and issue declaratory relief that "the MOU between the parties does not contain a clear and unmistakable waiver of [PPOA's] right to bargain over contracting out bargaining unit work."

The County opposed the writ petition, asserting the MOU clearly waived PPOA's right to bargain over "reorganization" decisions including the outsourcing decision.

---

[4]     PERB is "a quasi-judicial administrative agency modeled after the [National Labor Relations Board]" with "exclusive initial jurisdiction over complaints alleging unfair labor practices violating the [Meyers-Milias-Brown Act, or] MMBA" by all California counties except Los Angeles County. (*County of Los Angeles*, *supra*, 56 Cal.4th at p. 916.) Decisions from PERB interpreting the MMBA are "highly persuasive" to ERCOM. (*Id.* at p. 917.)

The superior court denied PPOA's petition, reasoning that the County met its "burden to prove the[] defense of waiver" in Article 16 of the MOU.  Beginning with "the dictionary definition of the word reorganization," the court concluded that "reorganization" as used in Article 16 is not limited to "a wholly internal restructuring" but could include the transfer of work to outside contractors.[5]  The court then examined the context of Article 16, noting "Article 16 addresses a single subject—the transfer, restructuring and termination of work performed by represented employees," "expressly contemplates the transfer of represented employees' functions to private entities," and "concludes with a single sentence expressing the parties' agreement the County has no obligation to 'negotiate the decision of any reorganization by the County during the life of the agreement.' "  The court concluded, "[t]he waiver sentence modifies the two paragraphs it follows," and "[t]he MOU reasonably uses the wor[d] 'reorganization' to collectively refer to all of those actions the County may take and is obligated to take 'in the event of transfer of functions.' "

The court entered judgment for the County, and PPOA timely appealed.

---

[5]     Consulting the Merriam-Webster Online Dictionary, the court noted "the dictionary definition of the word reorganization is 'the act or process of reorganizing:  the state of being reorganized *especially*:  the financial reconstruction of a business concern.' "  The court also observed that " '[r]eorganize' means 'to organize again or anew' " and "[t]he word 'organize' has multiple definitions, including 'to arrange by systematic planning and united effort,' 'to set up an administrative structure for,' and 'to arrange elements into a whole of interdependent parts.' "

7

## DISCUSSION

A.     *Governing Law and Standard of Review*

The Meyers-Milias-Brown Act (MMBA) "authoriz[es] collective bargaining for employees of most local governments, including Los Angeles County." (*County of Los Angeles v. Los Angeles County Employee Relations Commission* (2013) 56 Cal.4th 905, 915 (*County of Los Angeles*).)  The statute "imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees." (*Id.* at p. 916; see Gov. Code, § 3505.)

As relevant here, the MMBA imposes "mandatory bargaining requirements" for employer actions within the "scope of representation," i.e., with "*significant* effect on the 'wages, hours, and other terms and conditions of employment' of the bargaining-unit employees." (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 659 (*Building Material*); see Gov. Code, §§ 3504, 3504.5, 3505.)  This duty to bargain requires the public employer " 'to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1083.)  It is long settled that outsourcing is subject to mandatory bargaining; that is, "the permanent transfer of work away from a bargaining unit," including "to an independent contractor," if "the work transfer adversely affects the bargaining

8

unit in question." (*Building Material*, at p. 659 [collecting cases].)

It is also well settled that " 'a union may lawfully waive statutory rights of represented employees in a collective bargaining agreement.' " (*Ehret v. WinCo Foods, LLC* (2018) 26 Cal.App.5th 1, 5 (*Ehret*).) To be valid, the waiver must be "clear and unmistakable." (*Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1465 (*Choate*); accord, *Ehret*, at p. 5.) This standard is not satisfied by "silence in a bargaining agreement" (*Oakland Unified School District v. Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011) or " ' "a general contractual provision," ' " and is met only where the waiver is " ' " 'explicitly stated' " ' " (*Ehret*, at p. 5). The party asserting waiver of a bargaining right bears the burden to prove a clear and unmistakable waiver. (See *Kern County Hospital Authority v. Public Employment Relations Bd.* (2024) 100 Cal.App.5th 860, 884, 891 (*Kern County*).) "[W]hen an employer asserts the defense of a claimed waiver by a union ' "[c]ourts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based." ' " (*California State Employees' Assn. v. Public Employment Relations Bd.* (1996) 51 Cal.App.4th 923, 938 (*California State*).)

We interpret a public sector MOU "by the same rules as are applicable to private contracts." (*California Assn. of Highway Patrolmen v. Department of Personnel Admin.* (1986) 185 Cal.App.3d 352, 361; accord, *County of Fresno v. Fresno Deputy Sheriff's Assn.* (2020) 51 Cal.App.5th 282, 292; *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71.) " ' "The fundamental goal of contractual interpretation is

9

to give effect to the mutual intention of the parties." ' " (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.)

" 'Unless given some special meaning by the parties, the words of a contract are to be understood in their "ordinary and popular sense," focusing on the usual and ordinary meaning of the language and the circumstances under which the agreement was made.' " (*Bunker Hill Park Ltd. v. U.S. Bank National Assn.* (2014) 231 Cal.App.4th 1315, 1327; accord, *City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 248.) " '[I]n construing a contract the meaning of the words used is to be determined from a reading of the entire contract.' " (*Taranow v. Brokstein* (1982) 135 Cal.App.3d 662, 668; accord, *County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 415; see also Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].) " 'We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage.' " (*Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1063; accord, *In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 49.)

"In reviewing a trial court's judgment on a petition for writ of mandate, the appellate court is required to exercise independent judgment on legal issues." (*McIntyre v. Sonoma Valley Unified School Dist.* (2012) 206 Cal.App.4th 170, 179; accord, *Rivero v. Lake County Bd. of Supervisors* (2014) 232 Cal.App.4th 1187, 1193-1194.) "Interpretation of a contract is a question of law 'when it is based on the words of the instrument alone.' " (*Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th

807, 818; accord, *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 799.)

B.     *The MOU Does Not Reflect a Clear and Unmistakable Waiver of PPOA's Right To Meet and Confer Over the County's Outsourcing Decision*

PPOA argues that Article 16 of the MOU did not waive its right to bargain over the transfer of work to outside contractors. The parties agree that Article 16 is the only relevant part of the MOU and that there is no extrinsic evidence relevant to the interpretation of the MOU. The parties also agree that an employer's outsourcing of work performed by a bargaining unit affects the terms and conditions of employment and is subject to the meet-and-confer requirement of the MMBA. (See *Building Material, supra*, 41 Cal.3d at p. 659; *Rialto Police Benefit Assn. v. City of Rialto* (2007) 155 Cal.App.4th 1295, 1301 [the "City's decision to enter into a contract with the Sheriff's Department for law enforcement services affects wages, hours, and conditions of employment of the City's police officers within the meaning of . . . *Building Material*"].) Therefore, any waiver of the right to meet and confer over the County's outsourcing decision must be " 'clear and unmistakable.' " (*Building Material*, at p. 668.) We conclude the MOU did not clearly and unmistakably waive PPOA's right to meet and confer over the transfer of work to an outside contractor.

PPOA argues that the MOU does not "specifically state that 'Management shall have no obligation to negotiate either the decision or effect of contracting out bargaining unit work.' " Indeed, while the MOU amply discusses outsourcing, there is no express language where the union waives its statutory right to

11

bargain about the outsourcing decision. Article 16 is titled "Employee Rights in the Event of Transfer of Functions." As relevant here, it states: "In the event the County enters into any agreement with another public employer or private entity which involves the transfer of functions now being performed by employees in this representation Unit . . . , the County will advise such public or private entity of the existence and terms of this [MOU] and will immediately advise PPOA of such agreement." The MOU further provides that: "When a Department's Request for Proposal is approved by the Chief Executive Officer, the Labor Relations Office will arrange to meet with representatives of PPOA to advise them of this action within five (5) days."

The County does not argue that this language constitutes a clear and unmistakable waiver of the meet and confer right. Indeed, while these provisions state that the County will notify PPOA of an agreement or an outsourcing request for proposal within a specified timeframe, this language does not address PPOA's bargaining rights over a proposed outsourcing decision. (See *Choate*, *supra*, 215 Cal.App.4th at p. 1467 ["discussing a topic while at the same time saying nothing about the statutory right at issue does not effect a clear and unmistakable waiver of that right"].) Nor are the MOU's notice provisions plainly incompatible with the statutory meet and confer procedures applicable to employer actions falling within the scope of representation. (See Gov. Code, § 3505 [public agency must "meet and confer" with an employee organization "prior to arriving at a determination of policy or course of action . . . and continue for a reasonable period of time . . . includ[ing] adequate time for the resolution of impasses"]; see also *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara*

12

(2014) 224 Cal.App.4th 1016, 1039 (*Santa Clara*) [union unmistakably waived right to declare bargaining impasse and require mediation where the MOU's procedures "did not allow an 'adequate time for the resolution of impasses' " and thus indicated "that the parties did not intend the impasse resolution procedure to apply"].)  In other words, because these MOU provisions do not mention the meet and confer process or expressly conflict with or replace this process, this language does not constitute a clear and unmistakable waiver of the right to meet and confer.  (Cf. *Ehret*, *supra*, 26 Cal.App.5th at p. 9 [employees clearly and unmistakably waived the right to meal break in a bargaining agreement which "explicitly" "discuss[ed] meal breaks" and provided that " 'a meal period is not required' " for shifts under six hours].)[6]

The superior court and the parties relied extensively on their reading of the management rights clause at the end of Article 16 and whether "reorganization" encompassed outsourcing.  The management rights clause states:

---

[6]     The meet and confer process could still take place, for example, after an approved request for proposal is issued by the County because any contract would need to be ratified by the Board of Supervisors before any outsourcing takes place.  (See *Holmgren v. County of Los Angeles* (2008) 159 Cal.App.4th 593, 601-602 [Los Angeles County charter "expressly permits the county to either hire its own employees or outsource work to independent contractors"]; cf. *Advance Medical Diagnostic Laboratories v. County of Los Angeles* (1976) 58 Cal.App.3d 263, 268-269, 275 [contracts between County and outside contractor exceeding statutory amount in Gov. Code, § 25502.5 were "null and void" unless executed or later ratified by the board of supervisors].)

13

"Management shall have no obligation to negotiate the decision of any reorganization by the County during the life of this agreement."

The County argues that "the ordinary meaning of 'reorganize' " and "the surrounding contractual context" make clear that PPOA waived its right to meet and confer over outsourcing decisions. In the County's view, Article 16's focus on " 'transfer of functions' " indicates that the phrase " ' "any reorganization" ' " "plainly encompass[es], at a minimum, the range of staffing reorganization decisions described in [Article 16]," i.e., outsourcing. The County asserts " 'there is no reasonable alternative explanation for what the parties intended through the final sentence of Article 16.' "

PPOA responds that "reorganization" is not defined by the MOU, and that "reorganization is conceptually different than contracting out bargaining unit work." PPOA submits that "reorganization" as used in the management rights clause does not include outsourcing because "the decision to reorganize an operation is a managerial prerogative and thus falls outside the scope of representation." (See Gov. Code, § 3504, italics added [matters subject to bargaining "shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or *organization* of any service or activity"]; accord, *Building Material*, *supra*, 41 Cal.3d at p. 660.)

The management rights clause does not constitute a clear and unmistakable waiver of PPOA's right to meet and confer over outsourcing decisions. As stated, this provision does not

14

expressly mention PPOA's right under the MMBA to meet and confer regarding outsourcing decisions. (See *Choate, supra,* 215 Cal.App.4th at p. 1467 [a clear and unmistakable waiver "must be specific, and mention either the statutory protection being waived or, at a minimum, the statute itself"]; cf. *Building Material, supra,* 41 Cal.3d at p. 668 [provision authorizing internal reorganization of functions from one bargaining unit to another did not clearly and unmistakably waive bargaining rights over outsourcing decisions].) The "any reorganization" language in the MOU is vague and ambiguous, falling short of the requirement that any waiver of statutory rights be clear and unmistakable. (See *Kern County, supra,* 100 Cal.App.5th at p. 888 [no clear and unmistakable waiver of collective grievance procedures where MOU procedures were "ambiguous" on the subject]; *California State, supra,* 51 Cal.App.4th at pp. 938-939 [MOU language providing for salary adjustments for the " 'duration of this Agreement' " was "too general and vague" to waive employees' right to continued salary adjustments after MOU's expiration].)

As PPOA argues, this language may reasonably be interpreted to memorialize only the County's right under section 3504 to make "fundamental management decisions" without bargaining, including " 'organization' " decisions, such as layoffs. (*Building Material,* at p. 663; see, e.g., *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 621 (*Vallejo*) [personnel reduction decision is a managerial policy decision that is not negotiable because it concerns "an issue involving the organization of the service"]; *State Assn. of Real Property Agents v. State Personnel Bd.* (1978) 83 Cal.App.3d 206, 213 [similar].)

15

Further, general management rights clauses, such as the one in this MOU, function to preserve management prerogatives, rather than as a waiver of collective bargaining rights. (See *California Teamsters Public, Prof. etc. Union v. County of Solano* (1991) 233 Cal.App.3d 800, 805 [a management rights clause "simply recognizes the preexisting . . . rights routinely reserved for an employer" and "make[s] . . . clear that the MOU does not alter these preexisting rights of management"]; see also *International Assn. of Fire Fighters v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 271-277; *Vallejo, supra,* 12 Cal.3d at p. 616 [management rights language does not "restrict bargaining on matters directly affecting employees' legitimate interests in wages, hours and working conditions but rather . . . forestall[s] any expansion of the language of 'wages, hours and working conditions' to include more general managerial policy decisions"].) And, as stated, outsourcing is not a management right because it implicates the terms and conditions of employment and is subject to the meet-and-confer requirements of the MMBA. (See *Building Material, supra,* 41 Cal.3d at p. 659.)

For these reasons, the County did not meet its burden to demonstrate a clear and unmistakable waiver under the terms of the MOU. (See *Kern County, supra,* 100 Cal.App.5th at pp. 884, 891.)[7]

---

[7] In light of our holding, we need not address PPOA's remaining arguments.

16

## DISPOSITION

The trial court's order is reversed. On remand, the superior court is directed to issue a writ of mandate requiring the County to meet and confer regarding its decision to transfer work from PPOA to a private entity. PPOA may recover its costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.                                    STONE, J.

17

Filed 4/10/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LOS ANGELES COUNTY PROFESSIONAL PEACE OFFICERS ASSOCIATION, Appellant, v. COUNTY OF LOS ANGELES et al., Respondent. | B338182 (Los Angeles County Super. Ct. No. 23STCP00398) ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on March 13, 2026 was not certified for publication. It now appears the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c).

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

There is no change in the appellate judgment.

_____
MARTINEZ, P. J.          FEUER, J.          STONE, J.